IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

_____

**SOMO ENTERPRISES,**
**individually and on behalf all others**
**similarly situated,**

                                                  **Civil Action No. _____**

           **Plaintiffs,**

                                                  **JURY DEMANDED**

**v.**

**CATLIN SPECIALTY INSURANCE**
**COMPANY**

          **Defendant.**

_____

### CLASS ACTION COMPLAINT
_____

COMES NOW the Plaintiff, Somo Enterprises, individually and on behalf of all others similarly situated, and states and alleges the following for its Complaint against Catlin Specialty Insurance Company:

### PARTIES, RESIDENCY, JURISDICTION AND VENUE

1. Somo Enterprises (hereinafter "Somo" or "Plaintiff"), is a general partnership with its principal place of business located in Chattanooga, Tennessee. Somo has two general partners, Ron Bhalla and Shamista Bhalla, both of which are residents of the State of Tennessee.

2. At all times relevant hereto, Somo owned residential rental dwellings at the locations listed at **Exhibit "1"** (the "Somo Premises").

3. Defendant Catlin Specialty Insurance Company (hereinafter "Catlin") is organized under the laws of the State of Arizona with its principal place of business in Scottsdale, Arizona. Catlin is authorized to sell property insurance policies in the State of Tennessee, and is engaged in

the insurance business in the State of Tennessee, including issuing insurance policies covering property in Hamilton County.

4. The events giving rise to Plaintiff's individual claims that are the subject of this action occurred in the Chattanooga Division of the Eastern District of Tennessee.

5. On information and belief, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

6. This Court has personal jurisdiction over Catlin because it has availed itself of the privilege of conducting business and issuing insurance contracts covering structures in the State of Tennessee.

**FACTS**

**A. The Property Insurance Policy and Casualty Loss**

7. At all times relevant hereto, Somo was the insured pursuant to an insurance contract whereby Catlin agreed to insure, *inter alia,* the properties located at the Somo Premises against property damage, bearing Policy No. 10000303317-01 (the "Policy").

8. The Policy provided insurance coverage for direct physical loss to the buildings and other structures located on the Somo Premises, except as specifically excluded or limited by the Policy.

9. This lawsuit only concerns property insurance coverage for buildings, and *not* personal contents, such as clothes and furniture.

10. Pursuant to the Policy, Somo paid Catlin premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

11. On or about December 27, 2018, the dwellings located on 28 of the 36 Somo Premises suffered direct physical loss caused by wind (the "Loss").

12.     The Policy was in effect at the time of the Loss, and the Loss is compensable under the terms of the Policy.  As it relates to the Loss, there is no applicable exclusion.

13.     Somo promptly notified Catlin of the Loss and made a claim against the Policy.

14.     After its inspection, Catlin determined that the Loss was covered by the terms of the Policy.

15.     Catlin calculated its actual cash value ("ACV") payment obligation to Somo by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), then subtracted depreciation.

16.     The Policy, and the other property forms at issue in this pleading, do not permit the withholding or deduction of labor as depreciation as described below.

**B.  Catlin's Calculation of Somo's ACV Payments**

17.     In adjusting Somo's claim, Catlin affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate the loss and make its ACV payment.

18.     Catlin used commercially-available computer software to make its RCV, depreciation, and ACV calculations.  Catlin uses this software to calculate RCV, depreciation, and ACV.

19.     In or around March 2019, Catlin calculated the RCV of the damaged property at all the Somo Premises at $163,144.5246.

20.     Catlin then used the same software to calculate the depreciation for the damaged property at the Somo Premises at $38,201.55.

21. A copy of Catlin's February 2019 estimates for the Somo Premises that are at issue in this litigation, together with a Statement of Loss provided by Catlin, are attached hereto as **Collective Exhibit "2".**

22. Somo was underpaid, and deprived of the use of its money from the time it should have received it until the date it was belatedly paid, on its ACV claim as more fully described below.

### C. Catlin's Practice Of Withholding Labor As Depreciation

23. When it calculated Somo's ACV benefits owed under the Policy, Catlin withheld costs for both materials and the labor required to repair or replace the property as depreciation, even though labor does not depreciate in value over time. Catlin withheld labor costs throughout its ACV calculations as depreciation. Catlin also withheld labor costs as depreciation for other work necessary to repair and replace structures located on the Somo Premises.

24. Like all property insurance claims estimating software, the specific commercial claims estimating software used by Catlin allows for the depreciation of materials only or the depreciation of both material and labor in its depreciation setting preferences.

25. In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and laborers' overhead and profit necessary to restore property to its condition immediately prior to the loss, as well as removal costs to remove damaged property, under commercial claims estimating software.

26. Catlin's withholding of labor costs as depreciation associated with the repair or replacement of Somo's property resulted in Plaintiff receiving payment for its Loss in an amount less than it was entitled to receive under the Policy. Catlin breached its obligations under the

Policy by improperly withholding the cost of labor and other non-materials as depreciation when calculating its ACV payment obligations. Although Catlin belatedly paid previously withheld labor depreciation in 2020, Somo has been damaged by the lost time value of money.

27. Plaintiff cannot determine the precise amount of labor that was withheld based only upon the written estimates provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property insurance program at issue, as well as the electronic files associated with its estimates.

28. While an insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold repair labor as depreciation under Catlin's policy forms at issue in Tennessee. Catlin's failure to pay the full cost of the labor necessary to return Plaintiff back to its pre-loss condition left Plaintiff under-indemnified and underpaid for the Loss.

29. Catlin materially breached its duty to indemnify Plaintiff by withholding labor costs associated with repairing or replacing the Somo property from its initial ACV payment, thereby paying Plaintiff less than it was entitled to receive under the terms of the Policy and/or making untimely payments in breach of the contract.

**D. The Length of the Putative Class Period**

30. The maximum length of the putative class period is dependent upon *inter alia* the accrual of the causes of action for breach of contract, including but not limited to inherent discoverability of the breach.

31. In addition, any affirmative defenses that may be pled seeking to limit the length of the putative class period are subject to judicial doctrines concerning the accrual of the putative class members' claim and the concealment of the same by Defendant.

32. Catlin concealed its practice of withholding labor as depreciation from both state regulators and putative class members.

33. Specifically, as it relates to Tennessee regulators, in 2008, the National Association of Insurance Commissioners ("NAIC survey") published a copyrighted survey of state insurance departments and their respective positions on the depreciation of labor. The Tennessee Department of Insurance ("TDOI") formally responded to the survey.

34. As a prominent national property insurer that does a significant amount of business in Tennessee, Catlin knew or should have known of the existence of the NAIC survey and the TDOI's responses to the same.

35. First, the NAIC survey asked Tennessee regulators "Does your state allow the depreciation of labor under an actual cash value (ACV) loss settlement provision for property?" The TDOI stated in response: "It is generally the belief that labor is not depreciable, but the Department has no written position on the matter. We believe there is some case law supporting this aspect. To our knowledge, this is not a problem here."

36. Second, the survey also asked Tennessee regulators "Is depreciation for labor allowed on an ACV roof if it is totally replaced?" The TDOI stated in response: "We do not believe insurers are depreciating labor unless their provision calls for it. At least one insurer has a policy provision addressing this issue."

37. By at least 2008 then, Catlin was aware of or should have been aware that the TDOI took a position against the depreciation of labor based upon the NAIC 2008 survey, and that the TDOI believed that insurers were not engaging in the practice within the State of Tennessee unless their policy language called for labor depreciation.

38. At all times relevant hereto, Catlin's insurance policies neither addressed nor called for removal or repair labor to be withheld as depreciation. Similarly, Catlin's marketing materials did not address this practice, and consumers were not told of this practice when purchasing Catlin's property insurance products. Catlin never notified the TDOI that its understandings as set forth in the NAIC survey were incorrect, and that Catlin was in fact withholding labor within the State of Tennessee and elsewhere under property policies that did not call for that practice.

39. To further conceal its practice of withholding labor as depreciation, and to avoid any disputes with regulators and policyholders who made claims, Catlin unfairly used its claim estimating software to conceal its practice from policyholders.

40. Like most property insurers, Catlin used a product called Xactimate to determine the amount of depreciation to apply to a claim. Xactimate is used by both insurers and contractors to calculate the cost of rebuilding or repairing damaged property. Xactimate uses "line item" pricing to determine repair costs.

41. For all line items, Xactimate allows an insurer to depreciate labor by toggling on or off depreciation settings called "depreciate removal" and "depreciation non-material." If both of these settings are toggled on, then all line items will show the withholding of labor as depreciation.

42. Catlin affirmatively hid its use of its labor depreciation settings in Xactimate from both policyholder claimants and insurance regulators, if any, that may have investigated the same, by not disclosing its depreciation option settings in the estimates provided to policyholders (which the Xactimate setting allows) and by depreciating "pure labor line items" that would obviously reflect the withholding of labor.

43. For example, in the Plaintiff's estimates provided by Catlin, Catlin did not depreciate the removal labor associated with the pure labor line item-- "Tear off, haul and dispose

7
Case 1:20-cv-00067 Document 1 Filed 03/10/20 Page 7 of 18 PageID #: 7

of comp. shingles- 3 tab." This would lead a regulator or policyholder to believe that Catlin was not depreciating any labor. However, in other line items in the estimate, Catlin did use the depreciation setting to withhold labor when the line item reflected the mixed use of materials and labor.

44. In other words, Catlin only withheld labor from line items in estimates provided to policyholders where the policyholder could not detect the practice of withholding labor as depreciation. Catlin only depreciated labor in line items where it would be difficult if not impossible to detect the practice.

45. As a result, Catlin purposely intended to prevent an ordinary consumer or insurance regulator to know that Catlin depreciated labor, and not merely materials, when making ACV payments to policyholders.

46. At all times relevant hereto, Catlin was under an affirmative duty to fairly disclose the manner in which it calculated ACV payments to policyholders. In addition, when providing estimates to Plaintiffs and similarly situated policyholders, Catlin was under a duty to be truthful, and to not deceive by omission.

47. Catlin was in a superior position over policyholders to know that it was depreciating labor through Xactimate. Catlin's policyholders are not sophisticated in insurance claims handling procedures like Catlin. In addition, Catlin controlled the settings for the software, which expressly permit a company to properly limit depreciation to materials only. Moreover, policyholders do not have access to Catlin's software to determine whether it was used to depreciate labor costs. Without such access, and due to Catlin's affirmative steps taken to conceal their depreciation of labor costs, Catlin's policyholders lacked the same access to information enjoyed by Catlin and could not determine that Catlin was depreciating labor costs.

48. The practice was therefore not disclosed in the insurance policy, in the claim estimate, in the marketing materials, nor in the regulatory filings of Catlin. The affirmative steps Catlin took to conceal the cause of action for breach of the insurance contract were material facts that a reasonable person would have considered important in deciding whether to purchase insurance and/or accept ACV payments from Catlin.

49. Catlin's depreciation of labor costs was inherently undiscoverable by its very nature by its policyholders and thus Catlin's policyholders would not be—and in fact were not—aware that Catlin depreciated labor costs when calculating ACV despite policyholders' due diligence. Catlin is solely at fault for its policyholders' lack of knowledge about Catlin's depreciation of labor costs.

50. The concealment of information in estimates and other statements was performed by Catlin with the intent that policyholders believed that only materials were being depreciated when receiving ACV claim payments, and that policyholders would not know that their claim payments were actually diminished by the withholding of repair labor through the unfair manipulation of the Xactimate software and that policyholders would not contest the concealed practice in court or through regulatory action.

## AMOUNT IN CONTROVERSY

51. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

52. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit as a class action on behalf of itself and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

Only to the extent it is a requirement under applicable law, the proposed class herein are ascertainable.

53. The proposed class that Plaintiff seeks to represent is defined as follows:

> All Catlin policyholders (or their lawful assignees) who made: (1) a structural damage claim for property located in the State of Tennessee; and (2) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible.
>
> In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate software.
>
> The class period for the proposed class is the maximum time period as allowed by applicable law.
>
> The class excludes all claims arising under policy forms expressly permitting the "depreciation" of "labor" within the text of the policy form and any claims in which the actual cash value payments exhausted the applicable limits of insurance

54. Plaintiff reserves the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

55. Plaintiff and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some claimants upon further adjustment of the claim by virtue of the replacement cost provisions in their policy, if any. Further, certain amounts initially withheld as labor may be later repaid to some claimants (such as Plaintiff) upon further adjustment of the claim to re-calculate amounts owed without

depreciation of labor. However, such claimants (including Plaintiff) who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, prejudgment interest on the amounts improperly withheld, for the time period of withholding.

56. Specifically, under Tennessee state law, Plaintiff and members of the putative class who have been wrongfully deprived of money by the withholding of labor from ACV payments have been damaged in two ways. First, they have been damaged because they have not received the money to which they are entitled. Second, they have been damaged because they have been deprived of the use of that money from the time they should have received it until it was or is paid in full. In Tennessee, prejudgment interest compensates the wronged party for the loss of the use of the money he, she or it should have received earlier but for the breach of contract.

57. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that hundreds or thousands of people geographically dispersed across Tennessee have been damaged by Catlin's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Catlin or from information readily available to Catlin.

58. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

59. Catlin has acted on grounds generally applicable to the proposed class in that Catlin has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance.

60. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a. Whether Catlin's policy language allows it to withhold labor costs in its calculation of ACV payments;

   b. Whether Catlin's policy language is ambiguous;

   c. Whether Catlin's withholding of labor costs in its calculation of ACV payments breaches the insurance policies;

   d. Whether Catlin has a custom and practice of withholding labor costs in its calculation of ACV payments;

   e. Whether Plaintiff and members of the proposed class have been damaged as a result of Catlin's withholding of labor costs in its calculation of ACV payments;

   f. Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act;

   g. Whether the Plaintiff or members of the proposed class are entitled to injunctive relief requiring Catlin to comply with the Tennessee Supreme Court decision in *Lammert v. Auto-Owners (Mutual) Insurance Company*.

61. Plaintiff's claims are typical of the claims of the proposed class members, as they are all similarly affected by Catlin's custom and practice concerning the withholding of labor. Further, Plaintiff's claims are typical of the claims of the proposed class members because their claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiff is not different in any material respect from any other member of the proposed class.

62. Plaintiff and its counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class they seek to represent. Plaintiff has retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiff and Plaintiff's counsel have the

12
Case 1:20-cv-00067   Document 1   Filed 03/10/20   Page 12 of 18   PageID #: 12

necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation.

63. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

64. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiff and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

65. Questions of law or fact common to Plaintiff and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly

situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amounts due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by Catlin's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

66. Class certification is further warranted because Catlin has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

67. Plaintiff may seek, in the alternative, certification of issues classes.

68. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## COUNT I
## BREACH OF CONTRACT

69. Plaintiff restates and incorporates by reference all preceding allegations.

70. Catlin entered into policies of insurance with Plaintiff and members of the proposed class. These insurance policies govern the relationship between Catlin and Plaintiff and members of the proposed class, as well as the manner in which claims for covered losses are handled.

71. The policies of insurance between Catlin and Plaintiff and the other members of the proposed class are binding contracts under Tennessee law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

72. Catlin drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation.

73. In order to receive ACV claim payments, Plaintiff and the putative class members complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

74. The policies of insurance Catlin issued to Plaintiff and members of the proposed class state that, in the event of a loss, Catlin may fulfill its full or initial contractual obligation to an insured party by paying the ACV of the loss. At all times relevant hereto, Catlin's custom and practice has been, and is, to make such payments based upon Catlin's calculation of the ACV for the partial loss, less any deductible.

75. Catlin breached its contractual duty to pay Plaintiff and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

76. Catlin's actions in breaching its contractual obligations to Plaintiff and members of the proposed class benefitted and continue to benefit Catlin. Likewise, Catlin's actions damaged and continue to damage Plaintiff and members of the proposed class.

77. Catlin's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and members of the proposed class.

78. In light of the foregoing, Plaintiff and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts Catlin unlawfully withheld from their ACV payments, including prejudgment interest as may be allowed by law. Additionally, for all labor withholdings that have been subsequently and belatedly paid by Catlin to Plaintiff or other members of the proposed class, such persons are entitled to pre-judgment interest for the time period that the labor amounts were wrongfully withheld.

79. In light of the foregoing, Plaintiff and members of the proposed class are entitled to injunctive relief, enjoining Catlin from engaging in the practices complained of herein.

## COUNT II
## DECLARATORY JUDGMENT AND RELIEF

80. Plaintiff restates and incorporates by reference all preceding allegations.

81. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

82. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

83. Plaintiff and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

84. Plaintiff seeks, individually and on behalf of the proposed class, a declaration that Catlin's property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the methodology employed herein.

85. Plaintiff further seeks, individually and on behalf of the proposed class, any and all other relief available under the law that the Court deems necessary and proper to the administration of justice, including, but not limited to, identifying and locating policyholders, and notifying the same of the circumstances complained of and the restoration of their rights and remediation of their losses, and preclusion by Catlin from engaging in the conduct described herein, as may be permitted by law.

86. Plaintiff and members of the proposed class have suffered injuries.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiff as the representative of the class, and appointing Plaintiff's attorneys as counsel for the class;

2. Enter a declaratory judgment, declaring that Catlin's withholding of labor costs as depreciation is contrary to and breaches the insurance policy issued to Plaintiff and members of the class;

3. Enter a declaration, and any preliminary and permanent injunction and equitable relief against Catlin and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4. Enter an order that Catlin specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5. Award compensatory damages for all sums withheld as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiff and members of the proposed class;

8. Award costs, expenses, and disbursements incurred herein by Plaintiff and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

9. Pre- and Post-Judgment interest; and

10. Grant such further and additional relief as the Court deems necessary and proper.

McWHERTER SCOTT BOBBITT PLC

By: /s/ J. Brandon McWherter
J. BRANDON McWHERTER #21600
JONATHAN L. BOBBITT #23515
EMILY S. ALCORN #33281
341 Cool Springs Blvd, Suite 230
Franklin, TN 37067
(615) 354-1144
brandon@msb.law
jonathan@msb.law
emily@msb.law

ERIK D. PETERSON (KY Bar 93003)
(to be admitted *pro hac vice*)
MEHR, FAIRBANKS & PETERSON
 TRIAL LAWYERS, PLLC
201 West Short Street, Suite 800
Lexington, KY 40507
(859) 225-3731
edp@austinmehr.com

*Attorneys for Plaintiff and
Putative Class Representatives*